UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID BAUST, et al.,

        Plaintiffs,

   v.                             CIVIL ACTION NO. 2:20cv595

CITY OF VIRGINIA BEACH,

        Defendant.

## MEMORANDUM ORDER

    This matter comes before the court on the parties' Joint Motion to Approve Settlement Agreement ("Motion"), ECF No. 41; the accompanying Memorandum and exhibits, ECF No. 42; the proposed settlement agreement ("Settlement Agreement"), ECF No. 42-1; and Plaintiffs' First and Second Supplemental Filings in Support of an Award of Reasonable Attorneys' Fees Under the Settlement Agreement and associated exhibits, ECF Nos. 44, 46, including the Declaration of Sara L. Faulman, ECF No. 44-1 at 1-13 ("Faulman Declaration"). The parties seek court approval of the Settlement Agreement, which would resolve this action brought by Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Virginia Gap Pay Act, Va. Code Ann. § 9.1-701 et seq. ("VGPA").

    For the reasons explained below, the court **FINDS** the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions, and further **FINDS** the

attorneys' fees and expenses negotiated under the Settlement Agreement to be reasonable.

## I. BACKGROUND

This matter concerns requirements employers must abide by when compensating employees for hours worked over forty (40) in any given week, i.e., "overtime" pay requirements. The requirements relevant in this case are codified in two bodies of law: one federal and one state. At the federal level, the FLSA establishes a default position that employers must compensate employees for all hours worked over forty (40) hours per week at a rate of at least one and one-half times the employee's regular rate of pay. See 29 U.S.C. § 207(a)(1). However, workers "employed in a bona fide executive, administrative, or professional capacity" are generally not entitled to this overtime compensation. See 29 U.S.C. § 213(a)(1). Such employees are commonly referred to as "exempt." The VGPA establishes overtime pay requirements and other protections for "fire protection employees" similar to those imposed by the FLSA. See Va. Code Ann. § 9.1-701.

Plaintiffs,[1] current and former EMS Captains employed by the City of Virginia Beach, Virginia ("Defendant" or "City"), filed

---

[1] "Plaintiffs" refers to eight individuals, collectively: David Baust, Elizabeth Beatty, Michael Brown, Nicholas DiCaprio, William Padgett, Erik Svejda, Christopher West, and Kaleigh Zehr.

2

their Complaint on November 25, 2020. ECF No. 1. Plaintiffs alleged that at all relevant times Defendant improperly classified them as "exempt" employees who were not "fire protection employees" within the meaning of the VGPA, thereby depriving them of overtime pay and other benefits in violation of the FLSA and VGPA. See id. ¶¶ 1-3, 6, 16, 22. The parties conducted extensive discovery, filed cross-motions for summary judgment, and, ultimately, reached a settlement amenable to both Plaintiffs and Defendant. ECF No. 42-1.

The Settlement Agreement imposes two important obligations on Defendant. First, it would require Defendant to make a total payment of $200,000, of which $80,000 would be paid directly to Plaintiffs' counsel for attorneys' fees and expenses of litigation, with Plaintiffs receiving the balance of $120,000 through payroll checks. Id. ¶¶ 2.1-2.2. Second, Defendant would be required to convert the EMS Captains' classification to non-exempt. Id. ¶ 2.1.

The court must now assess whether the Settlement Agreement satisfies the requirements of the FLSA.

## II. LEGAL STANDARD

"All FLSA settlements must be approved either by the United States Department of Labor or the court." Carr v. Rest Inn, Inc., No. 2:14cv609, 2015 WL 5177600, at *2 (E.D. Va. Sept. 3, 2015) (Leonard, Mag. J.) (collecting cases). "Such

3

approval is required for both class actions and individual cases . . . ." Id. The court must determine whether the proposed Settlement Agreement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Minsterman v. S.L. Nusbaum Realty Co., No. 2:10cv303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (Davis, J.) (quoting Lynn's Food Stores, 679 F.2d at 1355).

In making a fairness determination, courts weigh a number of factors, including:

> (1) the extent of discovery that has taken place;
> (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
> (3) the absence of fraud or collusion in the settlement;
> (4) the experience of counsel who have represented the plaintiffs;
> (5) the probability of plaintiffs' success on the merits [;] and
> [(6)] the amount of the settlement in relation to the potential recovery.

Patel v. Barot, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (Morgan, J.) (quoting In re Dollar Gen. Stores FLSA Litig., No. 5:09-md-1500, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011)).

When considering these factors, courts must also keep in mind that

> [a] compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what

4

> concessions might have been gained since inherent in compromise is a yielding of absolutes and abandoning of highest hopes.

Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (Trenga, J.) (citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)). Moreover, "there is an overriding public interest in favor of settlement." Id. Therefore, "[t]here is a 'strong presumption in favor of finding a settlement fair' . . . ." Id. (quoting Camp v. Progressive Corp., Nos. Civ. A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).

The court must also review awards of attorneys' fees in a FLSA case. Carr, 2015 WL 5177600, at *3. The FLSA's fee-shifting provision provides that the court "shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As courts have explained, this provision illustrates that "[t]he FLSA 'contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs.'" Carr, 2015 WL 5177600, at *3 (quoting Poulin, 2010 WL 1813497, at *1). Accordingly, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a

5

settlement agreement." Id. (quoting Poulin, 2010 WL 1813497, at *1 (internal quotation marks omitted)).

The Fourth Circuit has outlined a three-step process for arriving at a reasonable attorney's fee: "(1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs." Randolph v. PowerComm Constr., Inc., 780 F. App'x 16, *22 (4th Cir. 2019). While "'the parties' voluntary agreement is due some deference, courts in this Circuit generally examine the lodestar princip[les] "as a guide" or a "cross check" to assessing the fairness of the negotiated sum.'" Davis v. BT Ams. Inc., No. 2:16-cv-206, 2017 WL 11506967, at *3 (E.D. Va. May 10, 2017) (Smith, J.) (quoting Stone v. SRA Int'l, Inc., No. 2:14-cv-209, 2015 WL 12748271, at *3 (E.D. Va. Mar. 20, 2015) (Miller, Mag. J.)). "[T]he lodestar amount . . . is defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" Carr, 2015 WL 5177600, at *3 (quoting Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008)).

The following twelve factors, first stated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), guide a district court's discretion in determining what constitutes a "reasonable" number of hours and rate:

(1) the time and labor expended;

6

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (spaces added) (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). A court need not consider all twelve Johnson factors, only those relevant to the particular litigation. See Lafleur v. Dollar Tree Stores, Inc., 189 F. Supp. 3d 588, 595 (E.D. Va. 2016) (Jackson, J.) (quoting In re A.H. Robins Co., Inc., 86 F.3d 364, 376 (4th Cir. 1996)). Similarly, the court need not consider factors a second time which it already addressed in its lodestar analysis. Id.

(quoting E. Associated Coal Corp. v. Dir., OWCP, 724 F.3d 561, 570 (4th Cir. 2013)).

The court must calculate a reasonable rate "according to the prevailing market rates in the relevant community." Id. at 596 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). However, "when the complexity and specialized nature of the case necessitates choosing an attorney outside of the community, and when the party choosing the attorney acted reasonably in making that choice," the rates in the attorney's community may also be considered. Id. (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994)).

### III. ANALYSIS

### A. BONA FIDE DISPUTE

In the context of unpaid-overtime claims brought under the FLSA, a "bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment. To settle such a dispute, there must be a resolution of the number of hours worked or the amount due." Lomascolo, 2009 WL 3094955, at *16.

The Settlement Agreement resolves a bona fide dispute between the parties concerning Plaintiffs' entitlement to unpaid overtime, among other issues. As illustrated by the parties' cross Motions for Summary Judgment, the parties disagree as to whether Plaintiffs are entitled to the overtime pay demanded under the relevant FLSA and VGPA provisions. Compare Pls.' Mem.

Supp. Summ. J., ECF No. 29 at 19-27 (alleging non-exempt status, coverage under VGPA, and entitlement to unpaid overtime), with Def.'s Mem. Supp. Summ. J., ECF No. 32 at 18-29 (alleging that Plaintiffs are exempt employees not covered by FLSA or VGPA).

The parties agree that several confounding factors make the ultimate outcome of a trial uncertain. ECF No. 42 at 8-11. This is illustrated by the fact that, under the Settlement Agreement, Defendant does not admit liability. ECF 42-1 ¶ 5.1. Moreover, the Settlement Agreement resolves Plaintiffs' claims by providing for their dismissal in exchange for a payment of $120,000 and Defendant's reclassification of the EMS Captain position as non-exempt. Id. §§ 2-4. Therefore, the court **FINDS** that the Settlement Agreement resolves a bona fide dispute concerning FLSA provisions that exists between the parties.

## B. FAIR AND REASONABLE SETTLEMENT

The court next addresses whether the Settlement Agreement "is a fair and reasonable resolution" of the parties' dispute. Minsterman, 2011 WL 9687817, at *1 (quoting Lynn's Food Stores, 679 F.2d at 1355). In doing so, the court keeps in mind the strong presumption in favor of finding a settlement fair.

### Factor (1): Extent of Discovery that Has Taken Place

Extensive discovery has already taken place in this case. Indeed, the court's Rule 16(b) Scheduling Order required it to be completed by June 30, 2021. ECF No. 19 ¶¶ 3-4. During

discovery, the parties exchanged documents and conducted numerous depositions. ECF No. 42 at 6. This has enabled the parties "to narrow the issues in the case and adequately assess the likelihood of success at trial." See Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1177 (S.D. Cal. 2016). This factor, therefore, weighs in the parties' favor.

### Factor (2): Stage of the Proceedings, Including the Complexity, Expense and Likely Duration of the Litigation

As noted above, the proceedings have progressed to an advanced stage.[2] It is clear to the court that the process has allowed "the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." Lomascolo, 2009 WL 3094955, at * 11. Indeed, should this matter proceed to trial, a jury would have to resolve multiple complex questions concerning the application of the FLSA and VGPA to the facts of this case. See ECF No. 42 at 6-7 (Memorandum in Support of Joint Motion to Approve Settlement Agreement identifying seven (7) issues for trial). These circumstances weigh in favor of approving the settlement.

---

[2] See supra Part III.A. (noting pending cross-motions for summary judgment).

**Factor (3): Fraud or Collusion in the Settlement**

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." Davis, 2017 WL 11506967, at *4 (quoting Lomascolo, 2009 WL 3094955, at *12). In this case, there is no evidence that fraud, collusion, or a conflict of interest tainted the bargaining process. The parties negotiated at arms-length and neither Plaintiffs, nor Defendant, object to the Settlement Agreement. ECF No. 42 at 7; id. at Ex. 1 at 12-19 (settlement authorization forms signed by all eight Plaintiffs). Thus, this factor also favors the court approving the Settlement Agreement.

**Factor (4): Experience of Counsel Who Have Represented Plaintiffs**

Plantiffs are represented in this action by multiple experienced attorneys with McGillivary Steele Elkin LLP (the "Firm"). Faulman Decl. ¶¶ 1-2, 12-15, 18-21. Five attorneys, ranging in experience from two to thirty years, worked on Plaintiffs' matter. Id. Lead counsel, Sara Faulman, is a partner with the Firm and has "over 17 years of civil litigation experience with particular emphasis in wage and hour collective and class actions on behalf of employees in FLSA and other wage cases." Id. ¶¶ 1-2. The court also notes that Ms. Faulman has served, or is currently serving, as plaintiffs' counsel in multiple FLSA actions in this district. Id. ¶ 5. Given this

impressive record, the "attorney experience" factor also weighs in favor of finding the settlement fair and reasonable.

### Factors (5) & (6): Probability of Plaintiffs' Success on the Merits & Amount of the Settlement in Relation to the Potential Recovery

Should this case proceed to trial, a jury would have to resolve the fact-bound issues that pervade. As the parties concede, "[t]he ultimate resolution of these issues through litigation could result in Plaintiffs failing on liability and, therefore, not recovering at all." ECF No. 42 at 8. There is conflicting case law concerning Plaintiffs' exemption status, resolution of the liquidated damages issue would turn on whether the city acted in good faith, and the extent of damages recoverable under the applicable statute of limitations hinges on whether Defendant's alleged FLSA violations were willful. Id. at 8-11.

Ultimately, Plaintiffs potential recovery ranges from zero to $470,000. See id. at 11-12. Under the Settlement Agreement, the eight Plaintiffs would split $120,000, or about 25% of their maximum potential recovery, and would have the costs and expenses of the litigation reimbursed to their attorneys. See id. at Ex.1 ¶¶ 2.1-2.2. Importantly, Defendant would also be required to remedy the allegedly improper classification of EMS Captains as exempt employees. Id. at ¶ 2.1. Given the uncertainty of any recovery should the matter proceed to a jury

12

trial, the direct payment Plaintiffs will receive, as well as the payment of expenses to their attorneys, and Defendant's obligation to convert the contested position classifications to non-exempt, factors Five and Six favor settlement approval.

### Conclusion

Having weighed the above factors, and keeping in mind the "overriding public interest in favor of settlement, particularly in class action suits," Lomascolo, 2009 WL 3094955, at *10, as well as the "strong presumption in favor of finding a settlement fair," id. (quoting Camp, 2004 WL 2149079, at *5), the court **FINDS** the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

### C. ATTORNEYS' FEES

The Settlement Agreement provides for the Firm to be paid $80,000, or 40% of the total payment Defendant must tender. ECF No. 42-1 ¶¶ 2.1-2.2. This is a reasonable fee award in light of the hours reasonably invoiced by Firm attorneys and expenses reasonably incurred in this matter. See 29 U.S.C. § 216(h) (explaining that "[t]he court . . . shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

## 1. Lodestar Amount

The court must first calculate a lodestar figure by multiplying a reasonable hourly rate by the number of hours reasonably expended by the Firm. See LaFleur, 189 F. Supp. 3d at 595 (citing Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998)). The Firm submitted a detailed statement itemizing the hours each of its attorneys and paralegals spent on this case, the rate charged by each timekeeper, and expenses incurred by the firm in pursuing the instant matter. ECF No. 46-1 at 4-56 ("Billing Statement"). The Billing Statement reflects fees of $191,648.00 and expenses of $13,884.69, totaling $205,532.69. Id. at 6. For the reasons explained below, the court **FINDS** that $195,950.29 (95% of the fees invoiced plus the Firm's full expenses) is an appropriate lodestar.

### i. Hourly Rates

The hourly rates charged by Plaintiffs' counsel[3] are reasonable, as they are consistent with the rates underlying

---

[3] The following table reflects the hourly rates charged by, and experience of, each timekeeper:

| Years of Experience | Hourly Rate |
|---|---|
| 30 | $430 |
| 17 | $430 |
| 12 | $430 |
| 6 | $250 |
| 2 | $200 |
| Various Paralegals | $100 |

other FLSA fee awards approved in this District. See LaFleur, 189 F. Supp. 3d at 597-98 (finding hourly rates ranging from $75 to $475 reasonable); Carr, 2015 WL 5177600, at *4 (finding $ 500 hourly rate "reasonable based on [the attorney's] experience and competence, and the nature of [the case]"). Plaintiffs' counsel are highly experienced in FLSA wage and hour actions.[4] Importantly, the rates charged are tied to the experience of the billing attorneys and are a reduction from the rates the attorneys normally charge in the D.C. metropolitan area, where the Firm is based. See Faulman Decl. at ¶ 23.[5]

## ii. Hours Billed

The court recognizes that a substantial amount of work was required to move this case forward to trial, and notes that no entries in the Billing Statement reveal fees invoiced to this matter for unrelated work. See ECF No. 46-1 at 4-56. Among other tasks, counsel conducted substantial discovery, prepared for multiple depositions, completed the work necessary to file a motion for summary judgment, and negotiated with Defendant. See id. However, the Billing Statement contains a substantial number of individual entries documenting invoiced time attributed to

---

See Faulman Decl. ¶¶ 1-2, 12-15, 18-21 (experience); ECF No. 46-1 at 5-6 (rates).

[4] See supra Part III.B. (Factor (4)); note 3 and accompanying text.

[5] See also supra note 3.

more than one task.[6] This practice of "lumping" multiple tasks into a single entry is commonly referred to as "block billing."

"The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 717 (E.D. Va. 2012) (Smith, J.). Accordingly, when block billing "prevents an accurate assessment of the reasonableness of [a] fee request" a court may "'reduc[e] the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved.'" See id. at 716-17 (quoting Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (Ellis, J.)) (10% reduction in lodestar under similar fee-shifting statute due to block billing and other concerns).

The Firm's block billing here did not entirely disable the court from assessing the reasonableness of the hours billed. It

---

[6]  See, e.g., ECF No. 46-1 at 13 (5.7 hours: "Office conference in advance of M. Smith Deposition; attend M. Smith Deposition; office conference, re: follow up matters as a result of City responses and further discovery; email to City, re: additional deposition"; 7.4 hours: "Prepare for and attend deposition of Kopin; mid-deposition and post-deposition discussion with SMB regarding same; prepare for and participate in call with SMB and CMW regarding plaintiff prep; draft outline template for plaintiff prep and analyze Plaintiff Personnel file for information; emails with opposing counsel regarding deposition of Chief").

did, however, undermine the court's ability to precisely and confidently assess the reasonableness of time spent on tasks which were "lumped" together and assigned an aggregated time.[7] Therefore, upon consideration of the circumstances and complexity of this case, as well as the experience of counsel representing Plaintiffs, the court **FINDS** that a 5% reduction in the fees billed by the Firm is proper.

If Plaintiffs had prevailed at trial, Defendant would have been liable for the "costs of the action." 29 U.S.C. § 216(b). However, if Plaintiffs had not prevailed at trial, they faced potential liability to the Firm for the costs of $13,884.69 expended in the litigation. See Faulman Decl. ¶ 25 (Firm requests reimbursement of litigation expenses). The court **FINDS** that the requested reimbursement is warranted in light of the Firm's documented expenses and the substantial volume of filings in this matter. ECF No. 46-1 at 42-56.[8] Therefore, the court

---

[7] See supra note 6.

[8] Plaintiffs' counsel itemized their expenses as follows: $6,572.84 for copies, $625.00 for court fees, $61.00 for "Docusign", $156.50 for process servers, and $6,470.35 for transcripts. ECF No. 46-1 at 43. The court notes that the Firm did not provide individual receipts to document their court fees, Docusign charges, or process server expenses. However, the court is confident that counsel's represented expenses, provided under oath, are reasonable and accurate in light of the number of filings in this matter.

**FINDS** that $195,950.29 (95% of the fees invoiced plus the Firm's full expenses) is an appropriate lodestar.

### iii. Johnson Factors

The relevant <u>Johnson</u> factors weigh in favor of finding the court's lodestar reasonable. The court begins by recognizing, as a general matter, that FLSA wage and hour actions are "fact intensive, requiring significant commitments of time and personnel to litigate." <u>See</u> <u>Davis</u>, 2017 WL 11506967, at *6. Further, this matter was "brought as a class action . . . which inherently requires considerable coordination and management." <u>Id.</u> As already explained, the issues presented concern difficult questions of, among other things, Defendant's "good faith" and conflicting case law.[9]

Furthermore, Plaintiffs' counsel are highly skilled in pursuing FLSA wage and hour claims, and took this case on a contingent-fee basis.[10] The work required to diligently pursue Plaintiffs' claims affected counsels' decisions concerning "what fee-generating cases and other matters it could, and could not, pursue" while litigating this matter for more than a year. ECF No. 44 at 5, 9. The Firm "bore all litigation expenses and assumed the risk of non-payment if [] Plaintiffs' claims were

---

[9] <u>See</u> <u>supra</u> Part III.B. (Factors (5) & (6)).

[10] <u>See</u> <u>supra</u> Part III.B. (Factor (4)); ECF No. 44 at 7.

ultimately unsuccessful." Id. at 7. To date, the Firm has not received any payment for its services. Id. at 3.

The court recognizes that the percentage of the total recovery Plaintiffs' counsel would receive is more than the one-third provided for in traditional contingent-fee arrangements: the $80,000 the Firm would receive represents 40% of the total payment Defendant must tender. ECF No. 42-1 ¶¶ 2.1-2.2. That said, "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover [] because an award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." See Davis, 2017 WL 11506967, at *6 (quoting Spencer v. Cent. Servs., LLC, No. CCB 10-03469, 2012 WL 142978, at *4 n.4 (D. Md. Jan. 13, 2012)) (approving settlement agreement providing for plaintiffs' counsel to receive 75% of total recovery). This is especially true in light of the difficulty of contingent-fee representations, from a business perspective, where the attorney representing an allegedly wronged employee may recover nothing at all.

Therefore, upon consideration of the Johnson factors, the court **FINDS** that they do not counsel adjustment of the court's $195,950.29 lodestar. The court need not subtract any amount from this figure for unsuccessful claims unrelated to the

instant matter, as only fees and expenses relating to this case were used to calculate the lodestar.

## 2. Degree of Success Achieved by the Plaintiffs

The court must next consider the reasonableness of the fee award in light of the success the Firm achieved for Plainitffs. The $80,000 that the Firm will receive under the Settlement Agreement represents roughly 40.8% of the $195,950.29 lodestar amount and 40% of the total payment Defendant must tender. This is justified in light of the benefits Plaintiffs will receive through the Settlement Agreement, namely, the monetary award, payment of litigation expenses, and the reclassification of the EMS Captain position.

The court recognizes that $120,000 is a fraction of what Plaintiffs would recover in a best-case scenario.[11] However, "[a] compromise is the essence of a settlement" and "inherent in compromise is a yielding of absolutes and abandoning of highest hopes." Lomascolo, 2009 WL 3094955, at *10 (citing Cotton, 559 F.2d at 1330). Given the significant concessions gained during the negotiation process, especially in light of the potential for Plaintiffs to ultimately recover nothing, Plaintiffs appear to have enjoyed a substantial degree of success.

Accordingly, after consideration of the relevant Johnson factors and the degree of success achieved by Plaintiffs, and

---

[11] See supra Part III.B. (Factors (5) & (6)).

using the lodestar amount as a guide, the court **FINDS** that the $80,000 award for attorneys' fees and expenses is reasonable.[12]

### IV. CONCLUSION

For all of the above reasons, the court **FINDS** the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions, and further **FINDS** the attorneys' fees and expenses negotiated under the Settlement Agreement to be reasonable. The parties are **DIRECTED** to file an executed copy of the Settlement Agreement, signed by all the parties, within fourteen (14) days from the date of entry of this Memorandum Order. A Final Order granting the Joint Motion to Approve Settlement Agreement, ECF No. 41, and dismissing the parties will be entered thereafter.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

December 8 , 2021

---

[12] The court also notes that because the lodestar fee is more than two times greater than the award negotiated under the Settlement Agreement, even a significant downward recalculation of the lodestar would not render the negotiated fee unreasonable. For example, a 50% across-the-board reduction of the lodestar fee would yield a fee of $97,975.14 – substantially more than the $80,000 provided for in the Settlement Agreement.